# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**WILLIAM E. SOPER,**

      **Petitioner,**

**vs.**                                      **No. CIV 96-0603 JP/JHG**

**JOHN SHANKS, Warden,**

      **Respondent.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

#### NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to **28 U.S.C. § 636 (b)(1)**, file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

#### PROPOSED FINDINGS

1.      This habeas corpus action, brought pursuant to **28 U.S.C. § 2254**, is before the Court on the merits. Petitioner (Soper) attacks the Judgment and Sentence imposed in the case styled ***State of New Mexico v. William E. Soper*, No. CR 92-0946, Second Judicial District, County of Bernalillo, State of New Mexico.**

2.      On November 16, 1992, Soper was convicted by jury verdict of armed robbery (firearm enhancement), conspiracy to commit armed robbery (firearm enhancement), and tampering with evidence. Answer, Exhibit A. On February 10, 1993, Soper was sentenced to a total of 12 years

incarceration, followed by concurrent terms of three years probation, and two years parole. *Id.* Soper

filed a direct appeal. Answer, Exhibit B. On May 12, 1994, the Court of Appeals reversed the

enhancements of the conspiracy conviction but otherwise affirmed. Answer, Exhibit G. The New

Mexico Supreme Court denied Soper's petition for a writ of certiorari on June 23, 1994. Answer,

Exhibit I. Soper filed a state petition for a writ of habeas corpus on January 29, 1996. Answer,

Exhibit J. The petition was denied on February 9, 1996. Answer, Exhibit K. The New Mexico

Supreme Court denied certiorari on March 21, 1996. Answer, Exhibit M. This action followed.

3.     Respondent conceded exhaustion. Soper raises the following issues in his brief:

I.     **Whether petitioner was deprived of his right to due process because the trial court failed to hold a competency hearing, despite petitioner's apparent intoxication during trial.**

II.    **Whether petitioner's due process rights were violated because the evidence was insufficient to establish that petitioner was the man who committed the charged armed robbery or that he tampered with evidence.**

III.   **Whether the trial court violated petitioner's confrontation rights when it precluded petitioner from cross-examining a police officer about charges that the officer, while on duty, had raped someone, where the officer testified petitioner had tried to hide a gun allegedly used in the robbery.**

IV.    **Whether the trial court violated petitioner's confrontation rights when it allowed an officer to read to the jury the eyewitnesses' prior statement, after the eyewitnesses had completed their testimony and were no longer available for cross examination.**

V.     **Whether the trial court violated petitioner's rights to due process and compulsory process when it denied petitioner's request for approximately an hour's continuance to present a witness that would have established a legitimate reason for petitioner's presence in the vicinity of the robbery.**

VI.    **Whether petitioner received ineffective assistance of counsel due to trial counsel's failure to:(a) move for a competency hearing due to petitioner's intoxication and/or move for a revocation of petitioner's bond so that he could become sober for trial; (b) secure in a timely fashion the testimony of a witness who would help establish a legitimate reason for petitioner's presence in the vicinity of the robbery; (c) move for a severance from the co-defendant who had a drug abuse problem**

and prior drug convictions; (d) move to suppress or otherwise challenge effectively evidence of the                  finding of a gun in the police car where petitioner was sitting, when the police gave conflicting testimony about who found it an where if was                        found; and (e) advise adequately about the wisdom of accepting a plea bargain for a five year sentence, rather than receiving the eleven year     sentence petitioner received after trial.

VII.    Whether petitioner was deprived of his due process rights by the prosecutor's misstatements of the facts regarding the eyewitnesses' identification testimony.

VIII.   Whether the admission of an eyewitness's identification testimony violated due process where the eyewitness selected petitioner's photo-graph because petitioner was the man shown to her as the suspect.

IX.     Whether the New Mexico Court of Appeals violated petitioner's due process rights on appeal by misrepresenting the evidence.

X.      Whether the cumulative effect of all the errors at trial violated petitioner's right to a fair trial.

4.      The first issue is whether the Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this case. The AEDPA does not apply to cases filed before April 24, 1996. *Lindh v. Murphy*, **117 S.Ct. 2059, 2068 (1997).** The Petition was file-stamped by the court clerk on May 3, 1996. When Soper signed the petition, however, he dated it April 18, 1996. Soper states in an uncontested affidavit attached to his memorandum brief that he delivered the petition to prison authorities for mailing on April 18, 1996. The date a prisoner delivers a document to prison authorities for mailing constitutes the date of filing for that document. *Houston v. Lack*, **487 U.S. 266, 269-276 (1988)**. The Court finds the Petition was filed on April 18, 1996. Therefore, the AEDPA does not apply to this case.

**I.      Whether petitioner was deprived of his right to due process because the trial court failed to hold a competency hearing, despite petitioner's apparent intoxication during trial.**

5.      Competency is a question of fact subject to the rebuttable presumption of correctness established in **§2254**. *Spitzweiser-Wittgenstein v. Newton*, **978 F.2d 1195, 1197 (10th Cir. 1992).**

3

The trial court found there was no reasonable doubt as to Soper's competence to stand trial. *State v. Padilla*, **118 N.M. 189, 194, 879 P.2d 1208, 1213 (Ct. App. )(cert. denied Jun. 23, 1994).** None of the exceptions to the presumption set out in **28 U.S.C. § 2254 (d)(1)-(7)** applies, and a review of the record reveals the jury's rejection of the entrapment defense is fairly supported by the evidence as required by **28 U.S.C. § 2254 (d)(8)**. Thus the trial court's determination of Soper's competency is entitled to a presumption of correctness.

## II. Whether petitioner' due process rights were violated because the evidence was insufficient to establish that petitioner was the man who committed the charged armed robbery or that he tampered with evidence.

6.      On federal habeas corpus review, the determinative question in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir.) cert. denied, 112 S.Ct. 115 (1991)** (quoting ***Jackson v. Virginia*, 443 U.S. 307, 319 (1979)** (emphasis in original)). Although sufficiency of the evidence for constitutional purposes is ultimately a question of law, ***Tapia v. Tansy*, 926 F.2d at 1562**, underlying factual determinations are presumed correct pursuant to **28 U.S.C. §2254 (d)**. ***Case v. Mondragon*, 887 F.2d 1388, 1392-93 (10th Cir. 1989), cert. denied, 494 U.S. 1035 (1990)**.

7.      Accordingly, this court may not weigh conflicting evidence nor assess witness credibility. ***Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)**. Instead, it must view the evidence in the light most favorable to the prosecution and accept the fact-finder's resolution so long as it is within the bounds of reason. ***Grubbs v. Hannigan*, 982 F.2d at 1487**.

8.      A review of the record in this case verifies the requirements of ***Jackson*** have been

4

satisfied with respect to every element of both offenses which Soper challenges. In fact, the evidence clearly supports his convictions. Soper's sufficiency of the evidence argument is without merit.

**III.** **Whether the trial court violated petitioner's confrontation right when it precluded petitioner from cross-examining a police officer about charges that the officer, while on duty, had raped someone, where the officer testified petitioner had tried to hide a gun allegedly used in the robbery.**

9.     Confrontation claims are subject to *de novo* review. ***Hatch v. Oklahoma*, 58 F.3d 1447, 1467 (10th Cir. 1995)**. The Sixth Amendment guarantees a criminal defendant  the right to confront witnesses against him.  ***United States v. DeSoto*, 950 F.2d 626, 629 (10th Cir. 1991) (citing *Davis v. Alaska*, 415 U.S. 308 (1974)).** One of the primary purposes of this right is to permit a defendant to attack the credibility of these witnesses. ***DeSoto*, 950 F.2d at 629.** A defendant may test credibility through questions aimed at revealing possible biases, prejudices or ulterior motives of the witness. ***Id.*** A defendant's constitutional right to confront adverse witnesses is not absolute or unlimited. ***Miranda v. Cooper*, 967 F.2d 392, 401 (10th Cir. 1992)**. The right to cross-examine is limited by policy considerations relating to unfair prejudice, confusion of issues, undue delay, presentation of cumulative evidence, and concern that the jury may be misled. ***Miranda v. Cooper*, 967 at 402.**

10.     While defense counsel should be allowed wide latitude when exploring witness credibility, ***Davis*, 415 U.S. at 318**, the trial court retains discretion to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or questioning which is repetitive or marginally relevant. ***Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).**The right to cross-examine is satisfied if "the jury had sufficient information to make a discriminating appraisal" of the relevant issues. ***Tapia v. Tansy*, 926**

**F.2d 1554, 1557 (10th Cir. 1991)** (*citing United States v. Larranaga*, **787 F.2d 489, 498 (10th Cir. 1986)**. A defendant establishes a violation of the Confrontation Clause by showing he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness from which jurors could appropriately draw inferences relating to the reliability of the witness. *Van Arsdall*, **475 U.S. at 680**.

11.     In this case, the trial court did not permit Soper to impeach Deputy Polanco with evidence he had been charged with criminal sexual penetration committed under color of authority as a police officer and, as a result, had been suspended from duty. A theory of the defense was Polanco had planted the gun which was found in the police car where Soper had been sitting after he had been searched.  Soper wanted to show Polanco was untruthful and he misused his position to plant the gun in the police car.  Polanco did testify; however, that he was suspended from duty at the time of trial. Soper was also permitted to inquire into the difference between Polanco's version of events and those of the other officers. In other words, the trial court did not cut off all questioning into Polanco's credibility but only limited inquiry into an area which could have engendered prejudice against defendant, confused the jury and was only marginally relevant. Under these circumstances, the trial court did not violate Soper's rights under the Confrontation Clause. *See Van Arsdall*, **475 U.S. at 679.**

12.     In any event, even if the trial court had violated Soper's rights under the Confrontation Clause in this regard, such a violation would not necessarily render his convictions invalid. "[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Van Arsdall*, **475 U.S. at 681**. This principal, in the form of the harmless error doctrine, applies to the denial of the opportunity to cross-examine an adverse witness. *Id.* **at 682**.  Constitutional errors may be "harmless" in terms

of their effect on the fact-finding process at trial. *Id*. The harmless error analysis focuses on the underlying fairness of the trial rather than the virtually inevitable presence of immaterial error. ***Van Arsdall*, 475 U.S. at 682**.

13.      The standard for harmless error on collateral attack in a federal habeas case is whether an error "had substantial and injurious effect or influence in determining the jury's verdict." ***Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))**. Soper fails to meet this standard. Therefore, preclusion of cross-examination of Polanco regarding charges of criminal sexual penetration under color of authority did not have a substantial and injurious effect or influence in determining the jury's verdict. Thus, if there had been any error, it would have been harmless.

**IV.      Whether the trial court violated petitioner's confrontation rights when it allowed an officer to read to the jury the eyewitnesses' prior statement, after the eyewitnesses had completed their testimony and were no longer available for cross examination.**

14.      The eyewitness store clerks, Victoria Morgan and Miqui Ramirez, had difficulty recalling some of the details of the robbery. After the prosecutor was unable to refresh their recollections with their written statements, a detective was permitted to read from and testify regarding parts of statements he took from the clerks on the night of the robbery which were recorded verbatim. The clerks testified the statements were correct. The clerks were subject to cross examination earlier by Soper. The New Mexico Court of Appeals determined the evidence was properly admitted under SCRA 11-803(E), which corresponds to Fed.R.Evid. 803(5).

15.      Evidence admissible under a firmly rooted exception to the hearsay rule does not violate the confrontation clause. ***United States v. Franks*, 939 F.2d 600, 603 (8th Cir. 1991); *Tomlin v. Beto*, 377 F.2d 276, 277 (5th Cir. 1967)**. Since the evidence was admissible under a

firmly rooted exception to the hearsay rule, it did not violate Soper's rights under the confrontation clause. ***Hatch v. Oklahoma*, 58 F.3d at 1467.** In any event, allowing the detective to read from and testify regarding parts of statements did not have a substantial and injurious effect or influence in determining the jury's verdict. Thus, the error, if any, would have been harmless. Therefore, his rights under the Confrontation Clause were not violated.

**V.     Whether the trial court violated petitioner's rights to due process and compulsory process when it denied petitioner's request for approximately an hour's continuance to present a witness that would have established a legitimate reason for petitioner's presence in the vicinity of the robbery.**

16.     With respect to a motion for continuance, the first question is whether the denial was arbitrary and unreasonable and the second question is whether any such violation rendered the trial fundamentally unfair. ***Scott v. Roberts*, 975 F.2d 1473, 1475 (10th Cir. 1992)**. These are legal conclusions involving mixed questions of law and fact. ***Id.*** In order to determine whether a denial of a continuance was arbitrary and unreasonable, the court should consider the diligence of the party requesting the continuance, the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's express need for the continuance, the need asserted for the continuance, and the harm suffered as a result of the denial. ***Id. (citing United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987))**.

17.     The witness in question, Hans Leeman, testified in an offer of proof that he lived near the scene of the robbery, Soper installed a sprinkler system for him two years earlier and he had not seen Soper since. Transcript, November 13, 1992 at 150-157. Leeman testified Soper was to have come back in a couple of weeks after the installation to pick up the timer. ***Id.*** In the spring of 1992, Leeman noticed the timer was missing from his garage. ***Id.*** This testimony was only marginally

8

relevant and would not have made a difference in light of the overwhelming evidence of Soper's guilt. Any harm suffered as a result of the denial of a continuance was insignificant. Under ***Scott v. Roberts***, **975 F.2d at 1475**, the trial court's denial of Soper's motion for continuance was not arbitrary and unreasonable.

**VI.   Whether petitioner received ineffective assistance of counsel due to trial counsel's failure to:(a) move for a competency hearing due to petitioner's intoxication and/or move for a revocation of petitioner's bond so that he could become sober for trial; (b) secure in a timely fashion the testimony of a witness who would help establish a legitimate reason for petitioner's presence in the vicinity of the robbery; (c) move for a severance from the co-defendant who had a drug abuse problem and prior drug convictions; (d) move to suppress or otherwise challenge effectively evidence of the finding of a gun in the police car where petitioner was sitting, when the police gave conflicting testimony about who found it an where if was found; and (e) advise adequately about the wisdom of accepting a plea bargain for a five year sentence, rather than receiving the eleven year sentence petitioner received after trial.**

18.    This issue is not argued in Soper's Memorandum Brief. It is argued in his motion for an evidentiary hearing. In his motion for an evidentiary hearing, Soper contends his attorney, Jeff Rein, was ineffective because he unreasonably failed to seek a competency hearing, unreasonably failed to secure Leeman's testimony, unreasonably failed to move for a severance, unreasonably failed to move to suppress or otherwise challenge the gun, unreasonably advised Soper regarding the wisdom of accepting a plea bargain, and his cumulative deficiencies warrant relief. In response and in support of his brief, Respondent offers the Affidavit of Jeff Rein, which is unrefuted.

19.    In order to obtain an evidentiary hearing under the standard applicable to this case, a petitioner must allege facts which, if proven, would entitle him to relief. ***Church v. Sullivan***, **942 F.2d 1501, 1510 (10th Cir. 1991) (citing *Townsend v. Sain*, 372 U.S. 293, 312 (1963))**. Soper has failed to allege such facts. An evidentiary hearing is therefore not required. Furthermore, the Court finds, in its discretion, a federal evidentiary hearing is not appropriate. Therefore, the motion for an

evidentiary hearing should be denied.

20.    In order to establish ineffective assistance of counsel, Soper must show his attorney's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *United States v. Chavez-Marquez*, **66 F.3d 259, 262 (10th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668 (1984))**.

21.    Effective assistance of counsel does not equate to "victorious or flawless assistance." *Dever v. Kansas State Penitentiary*, **36 F.3d 1531, 1537 (10th Cir. 1994)**. With respect to the performance element, review of counsel's performance is highly deferential. *Id.* With respect to the prejudice element, a reasonable probability that the result would have been different equates to a sufficient probability to undermine confidence in the outcome. *Id.*  Since Soper has the burden of establishing both prongs of *Strickland*, this Court may dispose of his claims of ineffective assistance of counsel on lack of prejudice alone. *Hatch v. Oklahoma*, **58 F.2d 1447, 1457 (10th Cir. 1995); *Thomas v. Kerby*, 44 F.3d 884, 887 (10th Cir. 1995)**. Therefore, Soper must demonstrate his attorney did not provide reasonably effective assistance and there is a reasonable probability that, but for counsel's errors, the result would have been different. *Laycock v. State of New Mexico,* **880 F.2d 1184, 1187 (10th Cir. 1989)**.

22.    Soper claims Rein was ineffective because he unreasonably failed to seek a competency hearing. In his affidavit, Rein states Soper insisted to him that he was sober. An attorney cannot be  ineffective when essential information is withheld from the attorney by the defendant. *United States v. Miller*, **936 F.2d 477, 480 (10th Cir. 1991)**.  Soper has not shown Rein did not provide reasonably effective assistance in this regard. Moreover, The Court has already found Soper

10

was not entitled to a competency hearing. Therefore, Soper has also failed to demonstrate prejudice.

23.    Soper contends Rein was ineffective because he unreasonably failed to secure Leeman's testimony.  Leeman's testimony was superfluous. it would not have altered the outcome of the case. Hence, Soper has failed to establish prejudice as required by **_Strickland_**.

24.    Soper alleges Rein was ineffective because he unreasonably failed to move for a severance from his co-defendant, Teresa Padilla. In his affidavit, Rein states he believed it was to Soper's advantage to have two attorneys challenging the evidence and Padilla, a very pleasant woman, would soften Soper's gruff appearance. In other words, this decision was a matter of trial strategy. Strategic decisions of counsel are not lightly second-guessed. **_United States v. Limehouse_**, **950 F.2d 501, 504 (7th Cir.)** **_cert. denied_** **112 S.Ct. 1962 (1992)**. In fact, strategic choices, at which counsel arrives after thorough investigation of relevant law and facts, are "virtually unchallengeable." **_Strickland v. Washington_**, **466 U.S. at 690**. Rein's decision on the severance issue was a matter of sound strategy and did not constitute ineffective assistance of counsel. In addition, the New Mexico Court of Appeals determined Soper's co-defendant was not entitled to a severance. Therefore, Soper has failed to demonstrate prejudice with respect to this issue as well.

25.    Soper contends Rein was ineffective because he unreasonably failed to move to suppress or otherwise challenge the gun. In his affidavit, Rein states such a motion would not have been particularly strong. There was no dispute that the gun was found and no dispute as to where it was found. The only dispute centered around who found the gun. There was no strong evidence to suggest a motive for planting the gun. Once again, this decision was a matter of trial strategy. Strategic decisions of counsel are not lightly second-guessed. **_United States v. Limehouse_**, **950 F.2d 501, 504 (7th Cir.)** **_cert. denied_** **112 S.Ct. 1962 (1992)**. Rein's decision on the issue of whether to

11

move to suppress or otherwise challenge the gun was a matter of sound strategy and did not constitute ineffective assistance of counsel.

26.     Soper contends Rein was ineffective because he unreasonably advised him  regarding the wisdom of accepting a plea bargain. In his affidavit, Rein states Soper told him early on he was not interested in pleading and he explained the plea offer to Soper. The trial court also inquired as to Soper's decision to forgo a "great" plea offer. Transcript, November 9, 1992 at 1-3. Rein was not ineffective with respect to his advice regarding the plea. ***Hatch v. Oklahoma*, 58 F.2d at  1457.**

27.     Since Rein was not ineffective in any instance,  there are no cumulative deficiencies of  counsel which warrant relief. Soper has failed to demonstrate Rein erred in his performance so as to prejudice him within the meaning of *Strickland*. ***Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994).**

## VII.   Whether petitioner was deprived of his due process rights by the prosecutor's misstatements of the facts regarding the eyewitnesses' identification testimony.

28.     In order to obtain habeas relief, Soper must show the trial prosecutor committed misconduct that so infected the trial with unfairness that the resulting conviction was a denial of due process. ***Hoxie v. Kerby*, 108 F.3d 1239, 1243 (10th Cir. 1997).** Soper contends in closing arguments, the prosecutor stated Morgan, one of  the eyewitnesses "identified Soper as the robber at the show up, in the photo array and at trial." Petitioner's Memorandum Brief at 60. He contends this was prosecutorial misconduct because Morgan testified she was not sure the man shown to her at the show up immediately after the robbery was the culprit.

29.     In support of this claim, Soper cites to pages 73, 75, 83, 139 and 140. He does not specify to which volume he refers. Volume III contains the prosecutor's closing arguments.

Transcript, November 13, 1992. On page 73 of Volume III, the prosecutor argues "she says the man

. . . who was brought back was the man who had robbed her..." Page 75 of Volume III does not

reference an out of court identification of Soper.  On page 83 of Volume III, the prosecutor argues

the two defendants were "identified over and over again." On page 139 of Volume III, the prosecutor

points out Ramirez  identified Soper. On page 140 of Volume III, the prosecutor refers to Morgan's

selection of  Soper from the photo array.

       30.    It is clear the prosecutor did not misstate the evidence. On the contrary, Soper has

misstated the remarks of the prosecutor. Soper has failed to show the prosecutor committed

misconduct that so infected the trial with unfairness that the resulting conviction was a denial of due

process. *Hoxie v. Kerby*, **108 F.3d at 1243.** Moreover, any error was harmless in light of the other

evidence of Soper's guilt. *Id.* **at 1244-1245.** Therefore, Soper was not deprived of his due process

rights by the prosecutor's comments.

**VIII.**   **Whether the admission of an eyewitness's identification  testimony  violated due
process where the eyewitness selected petitioner's photograph  because petitioner was
the man shown to her as the suspect.**

       31.    In order to determine whether the out of court identification was unconstitutionally

suggestive it must first be determined whether the pretrial identification procedure was unnecessarily

suggestive. *Grubbs v. Hannigan*, **982 F.2d 1483, 1489 (10th Cir. 1993).**  If the procedure is found

to have been unnecessarily suggestive, the corrupting influence of the suggestive procedure must be

weighed against the reliability of the identification. *Manson v. Brathwaite*, **432 U.S. 98, 114 (1977).**

Five factors are relevant in determining the reliability of a pretrial identification.  *Neil v. Biggers* **409**

**U.S. 188, 199-200 (1972).** These factors are the opportunity of the witness to view the criminal at

the time of the crime, the witness' degree of attention, the accuracy of his prior description of the

criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Id.*

32.     Soper contends Morgan's identification of him at the gas station after the robbery was unconstitutionally suggestive. Morgan testified that after the robbery the deputies brought a  man back to the gas station.  Transcript, November 10, 1992, at 25. They also showed her a gun. Transcript, November 10, 1992, at 31. She testified the man was wearing a red bandana, the same as the one worn by the robber. Transcript, November 10, 1992, at 25; 31; 55. The gun was the "same kind of weapon the guy had who robbed me." Transcript, November 10, 1992, at 31.

33.     Assuming without deciding the procedure was unnecessarily suggestive, the five relevant factors direct a conclusion the Morgan's identification of Soper at the show up was reliable. Morgan had an excellent opportunity to view Soper as he pointed a gun at her in the gas station, she was attentive, gave an accurate prior description, was certain Soper was the same person who robbed her, and viewed Soper only a short time after the robbery. Application of the five factors relevant to determining reliability establishes Morgan's identification of Soper at the show up was reliable.

34.     In addition, Morgan's identification of Soper at the show up was but one item of the overwhelming evidence identifying Soper as the robber. Morgan also selected Soper from a photo array, recognized him in a hallway outside the courtroom during trial, and identified him in court. Transcript, November 10, 1992, at 32; 37-38.  Soper was also identified as the robber by Ramirez at the show up and in court. Transcript, November 10, 1992, at 83-85. Morgan, Ramirez or  Deputy Ljunggren, who was parked across the street during the robbery and apprehended Soper and his co-defendant minutes later, had Soper or his getaway car in sight the entire time. Transcript November 12, 1992, at 13-16. In light of the plethora of evidence identifying him as the robber, Soper's

14

challenge is wholly without merit.

**IX.    Whether the New Mexico Court of Appeals violated petitioner's due process rights on appeal by misrepresenting the evidence.**

35.    Soper contends the New Mexico Court of Appeals violated his due process rights when it arbitrarily decided his case by misrepresenting the evidence. Review of the record and the opinion of the court of appeals establishes this contention is also utterly devoid of merit.

**X.    Whether the cumulative effect of all the errors at trial violated petitioner's right to a fair trial.**

36.    Cumulative error analysis applies where there are two or more actual errors. *Hoxie v. Kerby*, **108 F.3d at 1245.** It does not apply to the cumulative effect of non-errors. In this case, Soper has failed to show an instance of actual error. In addition, the record establishes the entire trial was not so fundamentally unfair so as to violate Soper's right to due process.

**RECOMMENDED DISPOSITION**

The Petition for a Writ of Habeas Corpus should be denied.


**JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE**